UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HOLLY M. JOHNSTON,**

    **Plaintiff,**

                                                **Civil Action 2:17-cv-657**
                                                **Judge Algenon L. Marbley**
    **v.**                                            **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Holly M. Johnston ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability, social security disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Response in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 7). For the reasons that follow, the undersigned **RECOMMENDEDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## I. BACKGROUND

Plaintiff protectively filed her application for a period of disability, disability insurance benefits, and supplemental security income on July 30, 2013. In her application, Plaintiff alleged a disability onset of January 5, 2010. Plaintiff's application was denied initially on April 16, 2014, and upon reconsideration on September 16, 2014. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Timothy Gates ("ALJ") held a hearing on May 24, 2016, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Richard P. Oestreich, Ph.D. (the "VE") also appeared and testified at the hearing. On July 12, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On May 31, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors (ECF No. 10), Plaintiff first challenges the ALJ's consideration and weighing of the opinion of her treating nurse practitioner, Alicja Matusiak, PMHNP-BC, who treated Plaintiff for her mental impairments. More specifically, Plaintiff argues that the ALJ failed to provide more than a "cursory and erroneous analysis" and that he cherry picked evidence necessary to discredit Nurse Practitioner Matusiak's opinion. (Pl.'s Statement of Errors 7, ECF No. 10.) Plaintiff next submits that the ALJ's mental RFC is not supported by substantial evidence because the ALJ failed, without sufficient explanation, to incorporate the limitations opined by the state agency physicians to whom he had assigned significant weight. Plaintiff also challenges the ALJ's evaluation of her fibromyalgia in assessing her physical RFC. Finally, Plaintiff maintains that the ALJ improperly evaluated her credibility under SSR 16-3p.

## II. THE ADMINISTRATIVE DECISION

On July 12, 2016, the ALJ issued his decision. (R. at 70-93.) The AJL first found that Plaintiff meets the insured status requirements through March 31, 2010. At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 5, 2010, the amended alleged onset date. The ALJ found that Plaintiff had the severe impairments of an anxiety disorder, affective disorders, a schizoaffective type disorder, carpal tunnel syndrome, degenerative disc disease of the spine, obesity, and hypertension. He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

After careful consideration of the entire record, the undersigned finds that the

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant could lift and/or carry 10 pounds frequently and 20 pounds occasionally. The weight limitations on pushing and pulling are defined by the ability to lift and carry, except, the claimant could only occasionally push and pull with the upper and lower extremities. She could frequently handle and finger bilaterally. She could occasionally reach overhead bilaterally. The claimant could frequently climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds. She could frequently balance, but could only occasionally stoop, kneel, crouch, and crawl. She should avoid exposure to unprotected heights and moving mechanical parts. The claimant could perform simple, routine, repetitive tasks. Further, she could have occasional interaction with supervisors, coworkers, and the general public.

(R. at 80.) In reaching this determination, the ALJ concluded that "while the claimant has medically determinable impairments that could reasonably cause some of the symptoms and limitations, . . . the claimant's testimony regarding the extent of such symptoms and limitations is not fully supported by the evidence of record." (R. at 91.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 91-92.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

4

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

The undersigned finds remand is required because errors in the ALJ's consideration of the opinion evidence relating to Plaintiff's mental impairments deprive his decision of substantial evidence.[2]

The record contains four opinions relating to Plaintiff's ability to perform work-related activities due to her mental impairments: (1) March 2014 opinion from consultative examiner Dr. Michele Evans, Ph.D.; (2) April 2014 opinion from state agency reviewer Dr. Janet Souder,

---

2. It is therefore unnecessary to consider Plaintiff's remaining contentions of error.

Psy.D. at the initial level; (3) September 2014 opinion from state agency reviewer Dr. Aracelis Rivera, Psy.D. upon reconsideration; and (4) June 2015 opinion of treating Nurse Practitioner Alicja Matusiak, PMHNP-BC.

In March 2014, Consultative Examiner Dr. Evans opined that Plaintiff's ability to understand complex instructions was compromised and that her diagnoses of severe and recurrent major depressive disorder and posttraumatic stress disorder would make it difficult to concentrate and maintain persistence. She also opined that Plaintiff's agoraphobia would "have a negative impact on her ability to respond to others in a work setting." (R. at 515.) Finally, she opined that Plaintiff's mental health symptomology "makes it unlikely that she would be able to deal with stress and pressures effectively." (R. at 516.) The ALJ assigned the March 2014 opinion of consultative examiner Dr. Evans "some weight," reasoning that her opinions are "generally consistent with the medical evidence of record supporting [Plaintiff] would have some decreased concentration and attention which would limit her to the performance of simple tasks." (R. at 89.) The ALJ stated that Plaintiff reported "some medicinal side effects interfering with her concentration and focus [and also] sleep deficits, and the record documented some attention deficits." (*Id*.) The ALJ also reasoned that "[w]hile the doctor noted it would be unlikely for her to deal with stress and pressures effectively, he did not provide a limitation for this area of functioning." (*Id*.)

In April 2014, state agency reviewing physician Dr. Souder opined that Plaintiff was limited to "simple and repetitive tasks that are not fast paced or have unusual production demands" and that she "will need occasional flexibility in scheduling work tasks and rest breaks within a normal workday/workweek, in order to manage symptoms" and that she "should not be required to

work in close collaboration with others." (R. at 148-49.) Dr. Souder also opined that the medical record documented some difficulties with interpersonal interactions and that Plaintiff "is limited to occasional and superficial interpersonal contact." (R. at 149.) Finally, Dr. Souder opined that Plaintiff's stress tolerance is limited and that she could "adapt to work settings in which duties are routine and predictable," but that she "will need assistance in setting ongoing goals and plans." (*Id.*) Upon reconsideration in September 2014, state-agency reviewer Dr. Rivera affirmed the assessment for Dr. Souder. (R. at 197-99.) The ALJ assigned "significant weight" to the opinions of Drs. Souder and Rivera, reasoning as follows:

> The undersigned provides significant weight to the consultants' mental assessments evidenced at Exhibits 2A, 4A, 6A, and 8A. The consultants opined the claimant showed moderate limitations in each area of mental health functioning and no episodes of decompensation, noting she is best suited for simple and repetitive tasks, that are not fast paced or have unusual production demands, would need occasional flexibility in scheduling, should not be required to work in close collaboration with others, and should have no more than occasional an[d] superficial interpersonal contact. However, the undersigned funds that while the claimant has moderate limitations in maintaining attention and concentration, the reduction to simple tasks is sufficient and the claimant would not require further limitation on production demands or flexible scheduling, as the remainder of her reports of concentration and attention deficits are based on medicinal side effects and are not objectively substantiated by the record. The consultants are well qualified by reason of training and experience in reviewing an objective record formulating an opinion as to limitations. The State Agency consultants are deemed to possess specific "understanding of our disability programs and their evidentiary requirements" (Social Security Ruling 96-6p). Here, their statements are generally consistent with the record as a whole showing some breakthrough symptoms of irritability, anxiety, depression, and racing thoughts, and at times voices, but no significant memory loss or deficits. As such, the undersigned affords the consultants' mental assessments significant weight.

(R. at 90.)

Finally, Plaintiff's Nurse Practitioner Matusiak, who treated Plaintiff for her mental health impairments, rendered an opinion regarding Plaintiff's mental health functioning in June

7

2015. Nurse Practitioner Matusiak opined that Plaintiff's mental health impairments caused her to be moderately and markedly limited in several work-related activities and that her condition would deteriorate further if she were placed under the stress of a competitive work setting. (R. at 607-09.) The ALJ assigned "no more than little weight" to Nurse Practitioner Matusiak's opinion, pointing out that she was not an acceptable medical source. (R. at 88.) The ALJ acknowledged that Nurse Practitioner Matusiak "was able to observe [Plaintiff] in person," but added that "the record is devoid of a length of time or type of relationship she had" with Plaintiff. (*Id*.) The ALJ also stated that Plaintiff's activities of daily living demonstrated that Plaintiff had no more than moderate limitations. (*Id*. at 88-89.)

As set forth above, the ALJ's RFC determination included the following non-exertional limitations: "The claimant could perform simple, routine, repetitive tasks," and "she could have occasional interaction with supervisors, coworkers, and the general public." (R. at 80.) Thus, notwithstanding according "significant weight" to the opinions of reviewing psychologists Drs. Souder and Rivera as "consistent with the record," the ALJ declined to include the following limitations they opined: (1) "simple tasks that are *not fast paced or have unusual production demands*"; (2) "occasional flexibility in scheduling work tasks and rest breaks within a normal workday/work week in order to manage symptoms"; (3) "occasional *and superficial* interpersonal contact"; and (4) "assistance in setting ongoing goals and plans." (*Compare* R. at 80 *with* R. at 147-50 and 197-99 (emphasis added).)

Certainly, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). But where, as here, the ALJ assigns a particular opinion "significant" or the greatest weight and states it is consistent with the record,

8

he must incorporate all of the opined limitations or provide an explanation for declining to do so. *See, e.g.*, *Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission); *Reed v. Comm'r of Soc. Sec.*, No. 1:16-CV-572, 2017 WL 1531872, at *6 (W.D. Mich. Apr. 28, 2017) (remanding case where, *inter alia*, "[t]he ALJ did not explain why he did not adopt this portion of the opinion [doctor's opinion as to the plaintiff's limitations] despite giving it great weight"); *Bookout v. Comm'r of Soc. Sec.*, No. 3:13-cv-463, 2014 WL 4450346, at *7 (E.D. Tenn. Sept. 10, 2014) (remanding case where, *inter alia*, "the ALJ adopted Dr. Fletcher's opinion in its entirety" but "ignored" certain limitations and stating that the ALJ "had a duty to explain" why she declined to adopt the limitations). The ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports his decision. *See id.*; *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision").

Here, the ALJ's explanation for not including the opined limitation is deficient because (1) the explanation he offers for not including some of the omitted limitations lacks record support, and (2) he fails to offer any explanation for omitting some of the opined limitations. Falling in the first camp are the limitations on production demands and the necessity of flexible scheduling Drs. Souder and Rivera opined. With respect to these limitations, the ALJ stated that although he agreed that Plaintiff "has moderate limitations in maintaining attention and concentration, the reduction to simple tasks is sufficient" such that Plaintiff "would not require further limitation on production demands or flexible scheduling, *as the remainder of her reports of concentration attention deficits are based on medicinal side effects* and are not objectively substantiated by the record." (R. at 90 (emphasis added).) The problem with the ALJ's rationale is that the record does not support his premise that "the remainder of her reports of concentration attention deficits are based on medicinal side effects," (*id*.). Nothing in either Drs. Sounders' or Rivera's opinions reflect that they attributed their opined limitations to Plaintiff's self-reported medication side effects. And contrary to the ALJ's statement within his discussion of consultative examiner Dr. Evans' opinion, Plaintiff did not report "some medicinal side effects interfering with her concentration in focus," (R. at 89). Rather, Dr. Evans did not note *any* reported medication side effects anywhere in her report, even though she explicitly considered Plaintiff's medications in the "HEALTH HISTORY AND MEDICATIONS" section of her report. (*See* R. at 510.) Significantly, Dr. Evans opined that Plaintiff's difficulty concentrating and the issues with attention, persistence, and pace that she observed were associated with Plaintiff's diagnoses of recurrent and severe major depressive disorder and posttraumatic stress disorder and that her inability to deal with stress and pressures effectively was attributable to her anxiety and other

10

mental health symptomatology. (*See* R. at 515-16.)   As noted above, the ALJ assigned "some weight" to Dr. Evans' opinion and also found it to be "generally consistent with the medical evidence of record."   (R. at 89.)   Moreover, even the ALJ noted that Plaintiff had, on multiple occasions, *denied* side effects from medications.   (*See* R. at 85, 86.)   Finally, the ALJ's discussion earlier in his opinion relating to Plaintiff's limitations in concentration, persistence, and pace does not independently provide a basis for discounting the pace and flexibility limitations Drs. Souder and Rivera opined because although the activities reflect Plaintiff's ability to concentrate and follow directions, she was not required to perform the activities at a particular pace or without flexibility and rest breaks.   (*See* R. at 79.)

The ALJ neglected to provide any discussion for omitting the limitations of only superficial interpersonal contact and the need for assistance in setting goals and plans that Drs. Souder and Rivera opined.   The ALJ's assertion that "the remainder of [Plaintiff's] reports of concentration attention deficits are based on medicinal side effects" could not be construed to apply because these limitations relate to Plaintiff's abilities to socially interact and adapt to the workplace.   (*See* R. at 149, 198-99.)   Although the ALJ's earlier discussion regarding Plaintiff's social functioning arguably supports the ALJ's decision to limit only the quantity (occasional) rather than the quality (superficial) of Plaintiff's social interaction, nothing in the ALJ's decision provides an explanation for why he failed to include Drs. Souder's and Rivera's opined limitation that Plaintiff requires assistance in setting goals and plans due to her issues with stress tolerance.

In summary, the undersigned finds that reversal is warranted because the ALJ assigned "significant" and the greatest weight to the opinions of the state agency psychologists because he found their opinions to be "generally consistent with the record," (R. at 90), but he failed to

11

provide explanations supported by substantial evidence for why he did not incorporate the limitations they assessed into Plaintiff's mental RFC.

## V.     DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). The undersigned therefore **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

  /s/ *Chelsey M. Vascura*  
CHELSEY M. VASCURA  
UNITED STATES MAGISTRATE JUDGE